IN THE UNITED STATED DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SHREDZ SUPPLEMENTS, LLC | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | Civil Action No. _____ |
| **vs.** | § | |
| | § | |
| NICHOLAS STELLA | § | JURY TRIAL DEMANDED |
| | § | |
| **Defendants**. | § | |

## COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

Plaintiff Shredz® Supplements, LLC ("Shredz"), for its Complaint against Defendant Nicholas Stella, alleges as follows:

## THE PARTIES

1.      Plaintiff Shredz is a New Jersey limited liability company, duly organized and existing under the laws of the State of New Jersey, having a principal place of business in Jersey City, New Jersey.

2.      Upon information and belief, Defendant Nicholas Stella ("Stella"), a former employee of Shredz, is an individual residing in the State of Texas.  Stella may be served with process in person at his place of residence at 15737 Stonebridge Drive, Frisco, Texas 75035.

## JURISDICTION AND VENUE

3.      Jurisdiction over these claims arises under 28 U.S.C. §§ 1331 and 1332 and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201-2202.  This Court also has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), as Defendant resides in this district.

## FACTUAL BACKGROUND

5.      Shredz is a direct marketing nutritional supplement company that provides all-natural, gluten free fitness supplements to customers in over 45 countries.  Shredz also markets

and sells a variety of fitness plans, apparel and branded accessories.

6.      At the core of its business, and vital to its continued growth and success, Shredz focuses on social media marketing and associating with talent able to capture and cultivate large followings.  Between the company's website, its various social media accounts and the social media accounts of its "sponsored athletes," Shredz has a reach that extends beyond 100 million followers.

7.      Shredz' innovative marketing approach is the result of extensive time and effort expended by a team of employees working under exclusive non-compete and confidentiality agreements.  A great deal of capital has also been invested into Shredz' dynamic marketing strategy, including developing a detailed strategy for identifying and utilizing search engine optimization ("SEO") keywords that consumers use when searching for weight loss products.  As a result of these marketing efforts, Shredz is one of the fastest-growing brands in the health and fitness industry, earning national and international recognition not only from consumers but also from a number of media outlets, including ABC, CBS, Sports Illustrated and Forbes Magazine.

8.      Shredz is the owner of various trademarks, service marks, and logos for use in the promotion of the Shredz' products, services, programs and marketing.  Shredz has spent the last four years developing considerable goodwill and the reputations of its trademarks, service marks, and other intellectual property.

9.      These service marks include, among others, "Shredz," U.S. Registration No. 4,197,050, for "dietary supplement for weight loss; supplements for body building; food and sport nutritional supplements for weight loss, strength and performance enhancement; nutritional supplements," (2) "Shredz", U.S. Registration No. 4,742,197, for "retail store services featuring dietary and nutritional supplements," and (3) "Shredz," U.S. Registration No. 4,767,679, for "dietary and nutritional supplements; Dietary and nutritional supplements containing vitamins, minerals or creatine; Dietary and nutritional supplements for endurance sports; Dietary and nutritional supplements used for weight loss; Dietary supplement drink mixes; Dietary supplements; Nutritional supplements; Protein supplement shakes for weight gain purposes;

Vitamin supplements; Weight management supplements." This final trademark registration covers the following design:



10.     The trademarks and service marks associated with Shredz' brand (the "Shredz Marks") have been in continuous since at least 2011. They are distinctive and immediately recognized by the general public.

**Defendant's Employment**

11.     Defendant worked as an SEO Specialist and Campaign Manager for Shredz until he was terminated in August of 2015. Defendant's job was to plan, launch and manage advertising campaigns designed to optimize Shredz' profitability. Defendant was also responsible for identifying powerful and profitable keywords in the fitness and weight loss space for use on Shredz' website, and was tasked with advising the company regarding SEO and campaign optimization tactics which would drive maximum traffic to the company's website.

12.     On April 1, 2015, Defendant executed an Employment Agreement under which he expressly agreed to refrain from competition or interference with Shredz and also to not solicit Shredz' actual or prospective customers while he was working with Shredz' and also for two years after the termination of his relationship. Defendant further agreed not to do work of any kind for any business in direct or indirect competition with Shredz while employed by the company. In the Employment Agreement, Defendant agreed that his obligations under the agreement would survive the termination of his employment and expiration of the Employment Agreement. A true and correct copy of the Employment Agreement is attached hereto as Exhibit "A," and is incorporated herein by reference.

13.     By entering into the Employment Agreement, Defendant further expressly agreed to refrain from taking any action that would harm Shredz or its reputation. Moreover, Defendant expressly agreed to the terms of a Confidentiality Provision, which states, in relevant part:

PLAINTIFF'S COMPLAINT AND REQUEST FOR INJUNCTION

The employee will have access to privileged and confidential information during the course of employment.  Such information may be about the Company or Company employees, contract providers, web site users, prospective individuals or about Company business, campaigns, finances, structure, marketing or the like ('Confidential Information').  **The Employee must ensure that all Confidential Information stays confidential and is not divulged to a third party without the Company's consent**.

*See* Exhibit A (emphasis added).

14.     Subsequently, upon learning that Defendant intended to leave the company and move to Texas, Shredz offered Defendant the opportunity to continue to perform his duties as an independent contractor.  Thus, on August 13, 2015, the parties entered into a "Work-For-Hire Agreement" under which Defendant expressly agreed to refrain from providing SEO or marketing services to any company in the industries associated with the categories of products marketed by Shredz during the term of the agreement and also for one year following the termination of his relationship.  Defendant further agreed not to solicit, divert or hire away any person employed by Shredz or any affiliate of Shredz during the term of the agreement and also for two years after the termination of the agreement.  Similar to the Employment Agreement, Defendant also expressly agreed to refrain from taking any action that would harm Shredz or its reputation.  In the Work-For-Hire Agreement, Defendant agreed that his obligations under the agreement would survive the termination of his relationship with the company and expiration of the Work-For-Hire Agreement.  A true and correct copy of the Work-For-Hire Agreement is attached hereto as Exhibit "B" and is incorporated herein by reference.

15.     By entering into the Work-For-Hire Agreement, Defendant further expressly agreed to the terms of a Confidentiality Provision, which states:

Contractor will not at any time or any manner, either directly or indirectly, use for the personal benefit of Contractor, or divulge, disclose or communicate in any manner Identification or related information or any information that is proprietary of the Company. **Specifically, Contractor will not disclose or share Company's SEO, optimization, and campaign management techniques, divulge to another entity or use for another entity's benefit the industry based knowledge provided by Company, and the like.** Contractor will protect such information and treat it as strictly

PLAINTIFF'S COMPLAINT AND REQUEST FOR INJUNCTION

confidential.  This provision shall continue to be effective after the termination of this Agreement.

*See* Exhibit B (emphasis added).

**Unlawful Conduct of the Defendant**

16.     Despite the aforementioned assurances and agreements, Defendant was, upon information and belief, secretly working behind Shredz' back to misappropriate trade secrets, customer information and other Proprietary and Confidential Information in order to directly compete with Shredz.  Unbeknownst to Shredz, Defendant was – while working for Shredz – forming his own competing nutritional supplement company, Diamond Cut Supplements, LLC.

17.     Upon information and belief, while employed by Shredz, Defendant was also intimately involved in the formation of a company that sells fitness-based bracelets, FitLife Designz, Inc. ("FitLife Designz").  Not only does the entity name incorporate Shredz' recognizable "z," FitLife Designz also utilizes the following marks in the marketing and promotion of its products, both of which prominently display the "z" in a fashion confusingly-similar to Shredz' registered service mark:

 

18.     Shredz has not authorized Defendant or FitLife Designz to use the Shredz Marks. To the contrary, Shredz has contacted Defendant and requested that he cease and desist using the Shredz Marks.  Despite these efforts, Defendant continues to flagrantly use the Shredz Marks to induce the public to purchase FitLife Designz products, notwithstanding the fact that it has no right to use the Shredz Marks.

19.     Such copying of the Shredz Marks goes past mere incidental similarity and thus inaccurately conveys a notion of association, authorization or approval on behalf of Shredz to the consumer.

20.     These copied marks create a false association between FitLife Designz and Shredz and otherwise are likely to cause customer confusion, mistake or deception.  In particular, customers of FitLife Designz are likely to believe that FitLife Designz' goods are authorized, sponsored or otherwise approved by Shredz, when in fact they are not.  Upon information and belief, Defendant's act of copying Shredz' trademark protected words and designs is intentional and willful.

21.     Defendant has profited, and will continue to commercially profit, both directly and indirectly, through his unauthorized copying of the Shredz Marks, and Shredz has been and continues to be injured by Defendant's unlawful acts.

22.     Further, upon information and belief, while employed with and/or working with Shredz, Defendant utilized the SEO skills and campaign optimization learned while employed with Shredz for the benefit of Diamond Cut Supplements and FitLife Designz.  Defendant also experimented with various SEO and campaign optimization tactics using Shredz' campaigns in order to later use those tactics in the marketing and promotion of Diamond Cut Supplements products and the products of FitLife Designz.  Upon information and belief, Defendant informed others that he was "using [Shredz'] money to learn how to grow" his businesses.

23.     Upon information and belief, while employed with and/or working with Shredz, Defendant also solicited other Shredz employees – specifically, a content developer and a social media associate – to develop content for FitLife Designz and run a marketing campaign on Facebook.  Upon information and belief, Defendant also attempted to hire one of these employees away from Shredz, but was unsuccessful in so doing because he "could not afford him."

24.     Finally, upon information and belief, while employed with and/or working with Shredz, Defendant made a specific threat to "harm the company" in the event he was terminated in a manner "[Shredz] would not notice."

25.     In taking the actions enumerated above, Defendant has among other things, breached various contracts; interfered with existing and prospective relationships; and

misappropriated trade secrets and other proprietary information and infringed upon the Shredz Marks – all to Shredz' detriment.

**COUNT I**
**BREACH OF CONTRACT**
**THE EMPLOYMENT AGREEMENT**

26.　　Shredz restates and re-alleges each of the allegations set forth above and incorporates them herein.

27.　　As a condition of his working relationship with Shredz as an SEO Specialist and Campaign Manger, and in order to secure his knowledge and access to Shredz' confidential information, Defendant executed the Employment Agreement under which, in exchange for valuable consideration, he expressly agreed that the information was secret, confidential and proprietary. *See* Ex. A, Article 5.

28.　　In breach of his obligations under the Employment Agreement, Defendant used his access to the confidential information to form two other competing companies (FitLife Designz and Diamond Cut Supplements), to engage in direct competition with Shredz and to solicit its customers and employees. *See* Ex. A, Articles 6 and 8.

29.　　In violation of his promises and obligations, and despite Shredz' performance of all obligations on its part under the Employment Agreement, Defendant breached said contract by, among other things, undertaking conflicting services, taking and using Shredz' confidential information, engaging in direct competition with Shredz and soliciting Shredz' customers and employees. Defendant also violated the promises and obligations under the Employment Agreement by engaging in behavior meant to harm Shredz. *See* Exhibit A, Article 7.

30.　　As a direct and proximate result of these breaches, Shredz has been damaged in an amount in excess of the jurisdictional minimum of this Court, said amount to be determined at trial, together with interest on that sum at the legal rate.

/ / /

/ / /

/ / /

## COUNT II
## BREACH OF CONTRACT
### THE WORK-FOR-HIRE AGREEMENT

31.     Shredz restates and re-alleges each of the allegations set forth above and incorporates them herein.

32.     As a condition of his working relationship with Shredz as an SEO Specialist, and in order to secure his knowledge and access to Shredz' confidential information, Defendant executed the Work-For-Hire Agreement under which, in exchange for valuable consideration, he expressly agreed that the information was secret, confidential and proprietary and that he had no claim, right, title, property or interest of any form in the confidential information.  *See* Ex. B, Section 7.

33.     In breach of his obligations under the Work-For-Hire Agreement, Defendant used his access to the confidential information to form two other competing companies (FitLife Designz and Diamond Cut Supplements), to engage in direct competition with Shredz and to solicit its customers and employees.  *See* Exhibit B, Section 4.

34.     In violation of his promises and obligations, and despite Shredz' performance of all obligations on its part under the Work-For-Hire Agreement, Defendant breached said contract by, among other things, undertaking conflicting services, taking and using Shredz' confidential information, engaging in direct competition with Shredz and soliciting Shredz' customers and employees.  *See* Exhibit B, Section 9.  Defendant also violated the promises and obligations under the Work-For-Hire Agreement by engaging in behavior meant to harm Shredz.  *Id.* at Section 8.

35.     As a direct and proximate result of these breaches, Shredz has been damaged in an amount in excess of the jurisdictional minimum of this Court, said amount to be determined at trial, together with interest on that sum at the legal rate.

/ / /

/ / /

/ / /

## COUNT III
## BREACH OF THE DUTY OF LOYALTY

36.     Shredz restates and re-alleges each of the allegations set forth above and incorporates them herein.

37.     As an employee of Shredz, Defendant owed a duty of loyalty to Shredz to act at all times in the interests of Shredz, to always prefer the interests of Shredz to his own self-interest, and to refrain from engaging in any conduct that would cause injury to Shredz or deprive it of opportunities.

38.     Upon information and belief, while employed by Shredz, Defendant breached his duty of loyalty to Shredz by conspiring to create and/or work for businesses that directly compete with Shredz, by accessing Shredz' computers for the purpose of taking trade secret, proprietary and other confidential information, including information related to Shredz' marketing processes and client lists, for his own benefit and to the detriment of Shredz. Defendant further breached his duty of loyalty by soliciting a Shredz employee from Shredz' employ to go work for a direct competitor.

39.     As a direct and proximate result of these breaches, Shredz has been damaged in an amount in excess of the jurisdictional minimum of this Court.  Because Shredz' remedy at law it inadequate, Shredz also seeks injunctive relief to protect its trade secrets and proprietary and other confidential information, its goodwill and other legitimate business interests.

40.     Defendant performed the foregoing acts fraudulently, maliciously and oppressively, with the specific intent to deprive Shredz of its lawful rights to its trade secrets, proprietary and other confidential information and to otherwise cause injury to Shredz by undermining its competitive advantage and interfering with its relationships with its clients and prospective clients.  Indeed, Defendant is known to have solicited at least one Shredz employee to resign from Shredz' employ and go work for a competitor.  By reason of Defendant's conduct, Shredz is entitled to an award of punitive damages.

/ / /

## COUNT IV
## MISAPPROPRIATION OF TRADE SECRETS

41.     Shredz restates and re-alleges each of the allegations set forth above and incorporates them herein.

42.     Shredz dedicates substantial personnel and financial resources to the continued development of its marketing processes and strategies in order to maximize the profitability of the product and services which it can provide to its customers, prospective customers, and business partners.  While improving upon these evolving trade secrets and other proprietary information, Shredz dedicates the same substantial resources to maintain, preserve and protect its associated property rights from any unlawful or unauthorized use, misuse, theft, misappropriation and infringement.

43.     Shredz' trade secrets and other proprietary information give Shredz a significant and valuable competitive advantage in its marketplace.  Such proprietary information and trade secrets are neither commonly known nor easily discoverable by Shredz' competitors. Only employees and company officers and directors have access to these proprietary methods. Further, Shredz' personnel policies and procedures require employees to keep confidential these methods.  Maintaining this secrecy is a condition of employment for Shredz' employees, as set forth in its standard employment agreement.

44.     Defendant was a trusted and key member of Shredz' team.  By virtue of Defendant's work as an SEO Specialist and Campaign Manager for Shredz, Defendant had access to, and became familiar with, Shredz' proprietary information in order to market Shredz' goods and services to its clients and potential clients.

45.     As set forth above, Defendant has improperly taken, disclosed and used Shredz' trade secrets and other proprietary information for his own financial gain. The continued misappropriation, disclosure, and use of Shredz' trade secrets and other proprietary information by Defendant will cause great and irreparable injury to Shredz in that the conduct will result in the diversion of substantial amounts of business.

46.     As a direct and proximate result of these acts, Shredz has been damaged in an amount in excess of the jurisdictional minimum of this Court, said amount to be determined at trial, together with interest on that sum at the legal rate.  Because Shredz' remedy at law it inadequate, Shredz also seeks injunctive relief to protect its trade secrets and proprietary and other confidential information, its goodwill and other legitimate business interests.

47.     Defendant performed the foregoing acts fraudulently, maliciously and oppressively, with the specific intent to deprive Shredz of its lawful rights to its trade secrets, proprietary and other confidential information and to otherwise cause injury to Shredz by undermining its competitive advantage.  By reason of Defendant's conduct, Shredz is entitled to an award of punitive damages.

## COUNT V
## TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS

48.     Shredz restates and re-alleges each of the allegations set forth above and incorporates them herein.

49.     Upon information and belief, Defendant was aware of the contractual relationships Shredz enjoyed with existing clients and employees.

50.     Defendant intentionally, maliciously and wrongfully interfered with and continues to interfere with these relationships by misappropriating Shredz' confidential information in the marketing and promotion of goods and services offered by direct competitors to Shredz' customers.  Further, as previously stated, Defendant has actively attempted to solicit current Shredz' employees away from Shredz' employ in order to work for Defendants' companies.

51.     Shredz has suffered and is continuing to suffer damages and/or losses as a result of same.

## COUNT VI
## TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE

52.     Shredz restates and re-alleges each of the allegations set forth above and incorporates them herein.

53.     Throughout his tenure with Shredz, Defendant, via his various agreements

PLAINTIFF'S COMPLAINT AND REQUEST FOR INJUNCTION

identified above, was privy to and had direct knowledge of Shredz' marketing and promotion efforts, as well as Shredz' identification, solicitation and negotiations with actual and prospective clients and customers and business partners throughout the United States and abroad.

54.     There was a reasonable probability that Shredz would have entered into further business dealings with these customers and clients.

55.     Upon information and belief, from as early as April 2015, and continuing to the present, Defendant has been abusing his confidential relationship with Shredz by using and misusing Shredz' trade secrets and other proprietary information to negotiate his own business dealings with Shredz' customers, prospective customers, and business partners in order to directly and unfairly compete and interfere with Shredz.   Along those lines, and with knowledge of existing contractual and/or other economic relationships with Shredz, Defendant directly solicited an existing Shredz employee to breach his agreement and terminate his relationship with Shredz to work with Defendant in direct competition with Shredz.

56.     Shredz was unaware of Defendant's self-dealing and interference until August 2015.

57.     In taking the above actions, Defendant unreasonably interfered with Shredz' existing and prospective economic relationships with its customers and employees.  Defendant's conduct alleged herein was done with a design to interrupt and interfere with such existing and prospective economic relationships and/or he knew that interference was certain or substantially certain to occur as a result of his actions.

58.     As a direct and proximate result of Defendant's interference with Shredz' economic relationships as alleged above, Shredz has suffered and will continue to suffer irreparable harm.  Defendant's ongoing business concerns threaten to continue engaging in such unlawful acts, and, unless and until enjoined and restrained by this Court, will do so.

59.     In engaging in the course of conduct described herein, Defendant acted maliciously, oppressively and/or fraudulently.  Defendant's actions constitute despicable conduct and were done willfully and in conscious disregard of Shredz' rights, and with knowledge that

such conduct would cause Shredz to suffer harm.  Shredz is therefore entitled to recover punitive damages.

60.     As a direct and proximate result of Defendant's acts, Shredz has been damaged in an amount in excess of the jurisdictional minimum of this Court, said amount to be determined at trial, together with interest on that sum at the legal rate.

61.     Shredz' remedy at law is not by itself adequate to compensate Shredz for the harm inflicted and threated by Defendant.  Shredz is therefore entitled to preliminary and permanent injunctive relief restraining Defendant, and all persons acting in concert with him, from engaging in any further acts to interfere with, or to induce breaches of, Shredz' existing and prospective economic relationships.

## COUNT VII
## FEDERAL TRADEMARK INFRINGEMENT
## 15 U.S.C. § 1114

62.     Shredz restates and re-alleges each of the allegations set forth above and incorporates them herein.

63.      Defendant's aforementioned acts constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

64.     Shredz' federal registration on the Principle Register for the mark "Shredz" is conclusive evidence of Shredz' exclusive right to use this mark, pursuant to the Lanham Act, 15 U.S.C. § 1115.  The registration is incontestable, which provides conclusive evidence of its validity, Shredz' ownership of the mark and exclusive right to use the mark in commerce in connection with the goods and services specified in the certificates of registration under 15 U.S.C. § 1115(b).

65.     Defendant's wrongful use of the name "FitLife Designz" and the aforementioned logos and misappropriation of the Shredz Marks as a thematic marketing concept for business in the  sports supplement and fitness industries is likely to cause confusion as to sponsorship or ownership by Shredz', or alternatively, destroy the origin-identifying function of the Shredz Marks.  Defendant's actions constitute trademark infringement in violation of section 32(a) of

the Lanham Act, 15 U.S.C. § 1114.

66.     As a proximate result of Defendant's actions, Shredz has suffered and will continue to suffer great damage to its business, goodwill, reputation, profits, and strength of its trademark.  The injury to Shredz is, and continues to be, ongoing and irreparable.  An award of monetary damages alone cannot fully compensate Shredz for its injuries and Shredz lacks an adequate remedy at law.

67.     The foregoing acts of infringement have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a). Shredz is entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits and costs and attorneys' fees.

## COUNT VIII
## FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, PASSING OFF AND FALSE ADVERTISING
## 15 U.S.C. § 1125(a)

68.     Shredz restates and re-alleges each of the allegations set forth above and incorporates them herein.

69.     The Shredz Marks, as used by Shredz in connection with providing goods and services relating to the sports supplement and fitness industries, are distinctive marks and have become associated with Shredz, and thus exclusively identify Shredz' businesses, products, and services.

70.     Because of Defendant's wrongful use of the "FitLife Designz" name and his appropriation of the Shredz' Marks in connection with the thematic marketing concept for the sports supplement and fitness industries, consumers are deceptively led to believe that Defendant's business originates with or is sponsored or otherwise approved by Shredz, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or alternatively, will cause consumers to believe that the Shredz Marks are generic, thus destroying the goodwill and value that Shredz has built with the Shredz Marks.

71.     The foregoing acts and conduct by Defendant constitute false designation of origin, passing off and false advertising in connection with products and services distributed in interstate commerce, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

72.     Defendant's acts, as set forth above, were committed willfully, with full knowledge of Shredz' rights and with the intention to deceive and mislead the public.

73.     The acts of Defendant alleged above were committed willfully, with full knowledge of Shredz' rights, with the intention of misappropriating and wrongfully trading upon the valuable goodwill and reputation of Shredz and the Shredz' Marks and with the intention of causing harm to Shredz.

74.     Defendant's acts have caused irreparable injury to Shredz' goodwill and reputation.  The injury to Shredz is, and continues to be, ongoing and irreparable.  An award of monetary damages alone cannot fully compensate Shredz for its injuries and Shredz lacks an adequate remedy at law.

75.     Shredz is entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits and costs and attorneys' fees.

## COUNT IX
## DILUTION OF FAMOUS MARKS
## 15 U.S.C. § 1125(c)

76.     Shredz restates and re-alleges each of the allegations set forth above and incorporates them herein.

77.     The Shredz Marks have become famous in accordance with the standard set forth in 15 U.S.C. § 1125(c).

78.     Defendant began infringing upon the Shredz Marks after they became famous.

79.     Shredz has never authorized, licensed or otherwise condoned or consented to Defendant's use of the Shredz Marks.

80.     Shredz has no control over the quality of FitLife Designz website, products, advertising and other promotional materials, and its misappropriation of the Shredz Marks as a

thematic marketing concept in the sports supplement and fitness industries.  As a result of such use by FitLife Designz, the distinctive qualities of the Shredz Marks are being, and will continue to be, diluted.

81.    Defendant's misappropriation of the Shredz Marks as a thematic marketing concept for fitness-related bracelets is and will continue to result in the dilution of the distinctive nature of the Shredz Marks through blurring, in violation of 15 U.S.C. § 1125(c).

82.    Defendant's wrongful conduct constitutes an extreme threat to the distinctiveness of the Shredz Marks that Shredz has expended great efforts to develop and maintain through its strict control over the decision to not license usage of the Shredz Marks.

83.    The distinctive nature of the Shredz Marks is of enormous value, and Shredz is suffering and will continue to suffer irreparable harm and blurring of the Shredz Marks if Defendant's wrongful conduct is allowed to continue.

84.    Defendant's misappropriation of the Shredz Marks as a thematic marketing concept for the sports supplement and fitness industries will likely continue unless enjoined by this Court.

85.    Shredz is entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits and costs and attorneys' fees.

**COUNT X**
**VIOLATION OF THE FEDERAL COMPUTER FRAUD AND ABUSE ACT,**
**18 U.S.C. § 1030**

86.    Shredz restates and re-alleges each of the allegations set forth above and incorporates them herein.

87.    Defendant is aware that Shredz uses its computers, computer system, computer network, computer programs and software for the purpose of marketing and providing services to its customers and clients.

88.    Upon information and belief, Defendant intentionally violated the Computer Fraud and Abuse Act by, *inter alia*, accessing Shredz' computer without authorization or in

excess of authorized access, and thereby wrongfully obtained Shredz' trade secrets and confidential and proprietary information for his own financial benefit, and to the detriment of Shredz.

89.     As a direct and proximate result thereof, Shredz has suffered substantial damages and loss.

90.     The aforesaid conduct of Defendant was willful, wanton, malicious and/or in reckless disregard of Shredz' rights.  Shredz is therefore entitled to recover punitive damages.

## COUNT XI
## VIOLATION OF NEW JERSEY'S COMPUTER-RELATED
## OFFENSES ACT, N.J. Statute 2A:38A-3

91.     Shredz restates and re-alleges each of the allegations set forth above and incorporates them herein.

92.     Defendant is aware that Shredz uses its computers, computer system, computer network, computer programs and software for the purpose of marketing and providing services to its customers and clients.

93.     Upon information and belief, Defendant intentionally violated the Computer Related Offenses Act by, *inter alia*, purposefully and  knowingly, and without authorization (a) altering, damaging, taking or destroying Shredz' data, existing internally or externally to the computers used by Shredz, Shredz' system or computer network; (b)  accessing or attempt to access same; and/or (c) accessing and recklessly altering, damaging, destroying or obtaining Shredz' data, and the data base as resident on Shredz' servers, computer software, computer equipment, computer system and/or computer network.

94.     As a direct and proximate result of Defendant's violations of the Computer Offense Act, as aforesaid, Shredz has suffered substantial damages.

95.     Defendant's conduct was willful, wanton, malicious and/or in disregard of Shredz' rights.  Shredz is therefore entitled to recover punitive damages.

/ / /

/ / /

## COUNT XII
## INJUNCTIVE RELIEF

96.     Shredz restates and re-alleges each of the allegations set forth above and incorporates them herein.

97.     Shredz requests that pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court issue a temporary restraining order, and preliminary and permanent injunctions, enjoining and restraining Defendant and, as applicable, his agents, servants, employees, attorneys, and any and all persons in active concert or participation with any of them, from:

i.)     Infringing upon or otherwise misappropriating the Shredz Marks;

ii.)    Engaging in any competition with Shredz;

iii.)   Engaging in any activity to solicit Shredz' employees, independent contractors, representatives and agents;

iv.)    Engaging in any activity intended to disparage or otherwise harm Shredz; and

v.)     Misappropriating Shredz' confidential and proprietary information and information of Shredz' customers that Defendant obtained while acting as a Shredz' employee or independent contractor.

98.     Shreds requests that the Court set a hearing on its request for temporary restraining order and preliminary injunction in accordance with the Federal Rules of Civil Procedure and Local Rules. After notice to Defendant and a final hearing, Shredz requests that the Court enter an order granting the requested injunctive relief permanently.

## DEMAND FOR  TRIAL BY JURY

Shredz specifically requests a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shredz respectfully request that judgment be entered in its favor and against Defendant and that the Court grant the following relief to Shredz:

1.   That the Court award damages to Shredz to which it is entitled, including, but not limited to, the full amount of actual damages caused by the Defendant's breach of the Employment and Work-For-Hire Agreements;

2.   For an award of punitive damages as warranted;

3.   For costs incurred in this action including reasonable attorneys' fees;

4.   That the Court enter a preliminary and thereafter a permanent injunction against Defendant from further misappropriating Shredz' trade secrets and confidential and proprietary information;

5.   For such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

**GORDON & REES LLP**

Dated:  September 2, 2015          By:      */s/ Kirstie M. Simmerman*
                                          Kirstie M. Simmerman
                                          *Lead Attorney*
                                          Texas Bar No.  24083858
                                          ksimmerman@gordonrees.com
                                          2100 Ross Avenue, Suite 2800
                                          Dallas, Texas 75201
                                          Tel:  (214) 231-4660
                                          Fax:  (214) 461-4053

                                          **ATTORNEYS FOR PLAINTIFF**
                                          **SHREDZ SUPPLEMENTS, LLC**

# EXHIBIT A

# EXHIBIT A

**EMPLOYMENT AGREEMENT**

This AGREEMENT is dated and in effect as of the 30th day of March 2015 ("Effective Date"), between Shredz Supplements, a New Jersey limited liability company with its principal place of business located at 1 Evertrust Plaza, Jersey City, NJ , 07302 and Nicholas Stella of 20 Beacon Way,# M302, Jersey City, NJ ,07304 ( referred to as the "Employee")

> **WHEREAS**, the Company desires to enter into an employment agreement with the Employee and the Employee desires to be in such an agreement
> **NOW**, therefore, in consideration of good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

## ARTICLE 1: TERM AND LOCATION

The Term of this Agreement shall commence as of the date first written above and shall remain in force unless replaced or terminated in accordance with the termination clause.

## ARTICLE 2: RIGHTS

This individual employment agreement may incorporate the provisions of the Company's Employee Handbook, which may be amended from time to time at Company's sole discretion. In any instance where the Employee Handbook specifies a different condition of employment to that expressly stated in this Agreement, the provisions of this agreement would override the Employee Handbook. It is agreed that no other promises or undertakings have been relied on in making this Agreement.

## ARTICLE 3: ATTENDANCE

It is reasonably expected that the Employee will be required to work at least 80 hours per semimonthly pay period. The Employee is expected to be flexible with time arrangements.

## ARTICLE 4: SALARY & OTHER COMPENSATION

The Employee's base salary for the position of Seo Specialist  will be ███████████ payable in semi-monthly installments on the 15th and 30th of each calendar month. Salary payments are subject to deductions for taxes & other withholdings as required by State and Federal Law. You will receive a Monthly Commission of ███ of Gross Revenue from a given month's Campaigns, which are managed solely by you, less the AdWords Campaign Spend for that given month - for a maximum commission of up to ████ a month. The ███ Gross Revenue outlined in this provision will begin only after the Advance on Monthly Commission, outlined in section c, is fully reimbursed.

COMPANY: _____   EMPLOYEE: _____

In the event the 15th or 30th of any calendar month falls on a Saturday, Sunday or Federal holiday, salary and/or commission payments will be made on the last possible calendar day for payment prior to this date.

## ARTICLE 5: CONFIDENTIALITY

The employee will have access to privileged and confidential information during the course of employment.  Such information may be about the Company or Company employees, contract providers, web site users, prospective individuals or about Company business, campaigns, finances, structure, marketing, or the like ("Confidential Information").  The Employee must ensure that all Confidential Information stays confidential and is not divulged to a third party without the Company's consent.  The Employee is not authorized to speak to the media concerning the Employer's business or Confidential Information unless specifically authorized.  The provisions as to confidentiality will also apply after the termination of this agreement and the Employee agrees to be bound to this.

## ARTICLE 6: NON-COMPETE

During the term of this Agreement and for a period of two (2) years after termination of this Agreement, and within the territory where the Company conducts business or markets its products or services, the Employee shall not, directly or indirectly, without the prior written consent of the Company obtain employment, consult, or contact any organization or individual in the sports supplements industry.

## ARTICLE 7: NON-DISPARAGEMENT

The employee agrees to take no action which is intended, or would reasonably be expected, to harm the Company or its reputation or which would reasonably be expected to lead to unwanted or unfavorable publicity to the company. This non-disparagement clause shall survive termination of this agreement.

## ARTICLE 8: CONFLICT OF INTEREST

The employee agrees not to do work of any kind in direct or indirect competition to the employer during the term of this agreement.

## ARTICLE 9: EMPLOYMENT AT-WILL/TERMINATION CLAUSE

This is an "At Will" employment agreement.  Nothing in Employer's policies, actions, or this document shall be construed to alter the "At Will" nature of Employee's status with Employer, and Employee understands that Employer may terminate his/her employment at any time for any reason or for no reason, provided it is not terminated in violation of state or federal law.

## ARTICLE 10: EMPLOYEE'S ACCEPTANCE

COMPANY: _____ EMPLOYEE: _____

The employee has read and agreed with the terms and conditions of this Employment Agreement. The Employee and Employer mutually acknowledge that this agreement supersedes any previous arrangements made between both parties.

If the foregoing reflects the Parties' understanding of the agreement, please so indicate by signing below and initialing each page of this Agreement.

**AGREED AND ACCEPTED**

Employee:  **Nicholas Stella**

**Date 04/01/2015**

For Shredz Supplements LLC :  **Arvin Lal, CEO**

**Date  04/01/2015**

COMPANY: _____ EMPLOYEE: _____

# EXHIBIT B

# EXHBIT B

**Work-for-Hire Agreement**

**THIS Work-for-Hire Agreement** (this "Agreement"), dated August 13, 2015 (the "Effective Date"), is by and between Shredz Supplements LLC., a New Jersey Limited Liability Corporation, with offices at 1 Evertrust Plaza, Jersey City, NJ 07302 and Nicholas Stella ("Contractor"), with the address _15737 Stonbridge Dn_ _Frisca TX, 75035_. For and in consideration of the agreements set forth below, Company and Contractor agree as follows:

**WHEREAS,** Contractor will provide Company with SEO based services in accordance with the terms stated herein.

1. **Description of Services ("Services")**

   Beginning on the Effective Date, Contractor will provide the services outlined as follows:

   1. Plan, launch and manage advertising campaigns optimized to support Company goals
   2. Support and advise optimization, on behalf of Company, via AdWords and similar platforms or applications.

   Contractor agrees to provide the Services in accordance with the industry standard for a professional trained to perform Services and in accordance with the quality of worked previously performed by Contractor when performing the same or similar Services.

2. **Payment for Services**

   a) As compensation, Company will pay the Contractor five percent (5%) of the Gross Income (i.e., Amount earned from a campaign less amount spent on the campaign) for campaign(s) approved by Company and managed by Contractor. The compensation earned during a given month (based on the 5% Gross Income) is limited to a maximum of $10,000 during a given calendar month.

   b) The compensation earned during a given month shall be paid on the 15th of a subsequent month, or a business day prior to the 15th if the 15th of a respective month is a Saturday, Sunday, or a Holiday.

3. **Term**

   The Term of this Agreement shall commence as of the date first written above and shall continue for a period of three (3) months and shall automatically renew for successive periods of three (3) months each. This agreement may be terminated with a thirty (30) day written or electronic notice by the terminating party.

4. **Non-Compete**

   During the term of this agreement, and for one (1) year after the termination of this agreement Contractor hereby acknowledges and affirms that the Contractor will provide the Services listed herein to the Company, exclusively, within the industries associated with the categories of products marketed by Company on or before the Effective Date, as well as the food seasoning, tea, and swimwear industries. Contractor agrees that providing services to any entity in these categories/industries, other than the Company, will result in legal and equitable damage to the Company for which the Company may seek injunctive and/or monetary relief.

   Contractor acknowledges and agrees that the nature of the information shared with Contractor by Company is sensitive to a threshold that justifies this Non-Compete and the term of this agreement.

5. **Relationship of Parties**

   It is understood by the parties that Contractor is providing independent contractors to the Company for campaign management services, and that no employee or associate of Contractor or any of its employees are an employee of the Company. The Company will not provide fringe benefits, including,

1

but not limited to, health insurance benefits, paid vacation, or any other type of employee benefit for the benefit of a Contractor employee.

6. **Work Product Ownership**

It is understood that Contractor shall not claim ownership in and to any information or Product provided to the Contractor by or on association with the Company. Contractor may not use any edited or unedited footage for any purpose without the consent of the Company. Company is and shall remain the exclusive owner of intellectual property and proprietary information associated with this agreement and/or Company property, including all patent, copyright, trade secret, trademark, goodwill, and other intellectual property rights therein. No license or conveyance of any rights to Contractor is granted or implied under this Agreement.

Contractor acknowledges and agrees that Work is a work for hire and Company shall be deemed the sole owner of any copyright and/or trademark rights therein. If the Work is deemed not to be a work made for hire by a court of competent jurisdiction, this Agreement shall constitute an irrevocable assignment of the worldwide exclusive license in the Work, to the Company. Contractor further agrees that Contractor shall, from and after the Effective Date, execute and deliver such other documents and take such other actions as may reasonably be requested to effect the transaction contemplated hereunder.

Contractor shall have the limited right to use the trade name, trademark, service mark, photography or videography subject (e.g., a Company Brand Ambassador, a Company Talent/Athlete, etc.) and logo (collectively, "Identification") of the Company solely for the purpose of performing the Services specified in this Agreement; provided, however, that the Company approves of such use. Upon termination of this Agreement for any reason, Contractor agrees to cease such use of the Company's Identification.

7. **Confidentiality**

Contractor will not at any time or in any manner, either directly or indirectly, use for the personal benefit of Contractor, or divulge, disclose, or communicate in any manner Identification or related information or any information that is proprietary to Company. Specifically, Contractor will not disclose or share Company's SEO, optimization, and campaign management techniques, divulge to another entity or use for another entity's benefit the industry based knowledge provided by Company, and the like. Contractor will protect such information and treat it as strictly confidential. This provision shall continue to be effective after the termination of this Agreement.

8. **Non-Disparagement**

During the term of this Agreement and for 2 year after termination of this Agreement, Contractor agrees to take no action, which is intended, or would reasonably be expected, to harm the Company or its reputation or which would reasonably be expected to lead to unwanted or unfavorable publicity to the company.

9. **Non-Solicitation**

During the term of this Agreement and for 2 year after termination of this Agreement, Contractor will not, without the prior written consent of the Company, either directly or indirectly, on its own behalf or in the service or on behalf of others, solicit or attempt to solicit, divert or hire away any person employed or contracted by the Company or any affiliate of the Company.

10. **Injuries**

Contractor acknowledges its obligation to obtain appropriate insurance coverage for the benefit of Contractor, its employees or associates. Contractor and its employees waive any rights to recovery from Company for injuries that Contractor's employees or associates may sustain while performing the Services under this Agreement.

11. **Indemnification**

2

Contractor agrees to indemnify and hold harmless the Company from all claims, losses, expenses, fees including attorney fees, costs, and judgments that may be asserted against the Company that result from the acts or omissions of Contractor, its employees, and/or its agents.

## 12. Entire Agreement

This Agreement contains the entire agreement of the parties, and there are no other promises or conditions in any other agreement whether oral or written that may bound either party to each other for the subject matter of this Agreement.

## 13. Severability

If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

## 14. Interpretation.

Any rule requiring interpretation of the terms of this Agreement against the drafter is waived where allowed by law. The Agreement shall be construed as if it was drafted as a result of mutual effort of both parties.

## 15. Applicable law and Forum Selection

This Agreement shall be governed and interpreted in accordance with the laws of the State of Delaware without regard to principles of conflict of laws. Any controversy or claim arising out of or relating to this Agreement, or any alleged breach thereof, shall be first subject to mediation conducted in New Jersey, each party to bear its own attorney's fees and costs and to share equally the costs of the mediation. If mediation does not resolve the dispute, then the Parties may exercise any remedies available to them under the law in a state or federal court located in the State of New Jersey.

## 16. Counterparts

This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Work-for-hire Agreement to be duly executed as of the Effective Date.

**Shredz Supplements LLC**

By: _____

Name: ANKIT AGGARWAL

Title: General Counsel

**Contractor**

By: _____

Name: Nicholas Stella

Title:

3