IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SHREDZ SUPPLEMENTS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case No.: 4:15-cv-00598 |
| | § | |
| NICHOLAS STELLA, | § | |
| | § | |
| Stella. | § | |

## NICHOLAS STELLA'S ANSWER TO SHREDZ SUPPLEMENTS, LLC.'S ORIGINAL COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

TO THE HONORABLE AMOS L. MAZZANT, III, UNITED STATES DISTRICT

JUDGE:

COMES NOW, Nicholas Stella (hereinafter referred to as "Stella") and files this

Answer to Shredz Supplements, LLC's Original Complaint, Affirmative Defenses, and

Counterclaims and would respectfully show the Court as follows:

## I.
## ANSWER TO COMPLAINT ALLEGATIONS

Stella responds to the allegations in each paragraph of Shredz Supplements,

LLC's Original Complaint as follows:

1.     Stella admits the allegations contained within paragraph 1 of the Complaint.

2.     Stella admits only so much of paragraph 2 of the Complaint that alleges that Stella

is an individual who resides in the State of Texas. Stella admits that he has been served

with process. Stella lacks knowledge or information sufficient to form a belief with

regard to the remaining allegations contained within paragraph 2.

3.      The allegations set forth in paragraph 3 of the Complaint are jurisdictional in nature and require no factual response.

4.      Stella admits only so much of paragraph 4 of the Complaint that alleges that Stella resides in this district.

5.      Stella admits only so much of paragraph 5 of the Complaint that alleges that Shredz Supplements, LLC (hereinafter referred to as "Shredz") is a direct marketing nutritional supplement company. Stella denies the remaining allegations contained in paragraph 5 of the Complaint.

6.      The allegations in paragraph 6 of the Complaint are argumentative and conclusive in nature and generally require no factual response by Stella. However, Stella denies the allegations contained within paragraph 6 of the Complaint.

7.      The allegations in paragraph 7 of the Complaint are argumentative and conclusive in nature and generally require no factual response by Stella. However, Stella denies the allegations contained within paragraph 7 of the Complaint.

8.      Stella denies the allegations contained within paragraph 8 of the Complaint.

9.      Stella lacks knowledge or information sufficient to form a belief as to the allegations contained within paragraph 9 of the Complaint.

10.     Stella denies the allegations contained within paragraph 10 of the Complaint.

11.     Stella admits that he did work for Shredz, however, Stella stopped working for Shredz to move to Texas. Stella denies the remaining allegations contained in paragraph 11 of the Complaint.

12.     Stella admits only so much of paragraph 12 of the Complaint that states that Stella executed an agreement on March 30, 2015. Stella denies the remaining allegations

contained in paragraph 12 of the Complaint. Specifically, the agreement makes no mention of Shredz actual or prospective customers or non-solicitation of those customers for two years. Instead, the language ineffectually attempts to prevent Stella from obtaining any employment of any kind in the "sports supplement industry".

13.     The allegations in paragraph 13 of the Complaint are argumentative and conclusive in nature and generally require no factual response by Stella. However, Stella denies the allegations contained within paragraph 13 of the Complaint.

14.     The allegations in paragraph 14 of the Complaint are argumentative and conclusive in nature and generally require no factual response by Stella. However, Stella denies the allegations contained within paragraph 14 of the Complaint.

15.     The allegations in paragraph 15 of the Complaint are argumentative and conclusive in nature and generally require no factual response by Stella. However, Stella denies the allegations contained within paragraph 15 of the Complaint.

16.     Stella denies the allegations in paragraph 16 of the Complaint. Specifically, Stella denies that after March 30, 2015 he was forming his own competing nutritional supplements company called Diamond Cut Supplements, LLC, or by any other name. Shredz is simply confused; Diamond Cut Supplements, LLC has not operated since prior to Stella working for Shredz on March 30, 2015 and has not operated since. Shredz simply saw that Stella had a supplement company in the past and panicked. Shredz failed to do their due diligence to see that Diamond Cut Supplements, LLC was no longer in business. Additionally, Stella has not operated any business, worked for any business in any capacity, or sold any products in the dietary supplement, food seasoning, tea, or swimwear product categories since he began working for Shredz on March 30, 2015.

17.     Stella admits only so much of paragraph 17 of the Complaint that prior, during, and subsequent to his employment with Shredz, Stella sold bracelets. Stella denies the remaining allegations contained in paragraph 17 of the Complaint.

18.     Stella denies the allegations contained in paragraph 18 of the Complaint.

19.     Stella denies the allegations contained in paragraph 19 of the Complaint.

20.     Stella denies the allegations contained in paragraph 20 of the Complaint.

21.     Stella denies the allegations contained in paragraph 21 of the Complaint.

22.     Stella denies the allegations contained in paragraph 22 of the Complaint.

23.     Stella denies the allegations contained in paragraph 23 of the Complaint.

24.     Stella denies the allegations contained in paragraph 24 of the Complaint.

25.     Stella denies the allegations contained in paragraph 25 of the Complaint.

26.     Stella restates and re-alleges each of his responses set forth above and incorporates them herein.

27.     Stella denies the allegations contained in paragraph 27 of the Complaint.

28.     Stella denies the allegations contained in paragraph 28 of the Complaint.

29.     Stella denies the allegations contained in paragraph 29 of the Complaint.

30.     Stella denies the allegations contained in paragraph 30 of the Complaint.

31.     Stella restates and re-alleges each of his responses set forth above and incorporates them herein.

32.     Stella denies the allegations contained in paragraph 32 of the Complaint.

33.     Stella denies the allegations contained in paragraph 33 of the Complaint.

34.     Stella denies the allegations contained in paragraph 34 of the Complaint.

35.     Stella denies the allegations contained in paragraph 35 of the Complaint.

36.     Stella restates and re-alleges each of his responses set forth above and incorporates them herein.

37.     Stella denies the allegations contained in paragraph 37 of the Complaint.

38.     Stella denies the allegations contained in paragraph 38 of the Complaint.

39.     Stella denies the allegations contained in paragraph 39 of the Complaint.

40.     Stella denies the allegations contained in paragraph 40 of the Complaint.

41.     Stella restates and re-alleges each of his responses set forth above and incorporates them herein.

42.     Stella denies the allegations contained in paragraph 42 of the Complaint.

43.     Stella denies the allegations contained in paragraph 43 of the Complaint.

44.     Stella denies the allegations contained in paragraph 44 of the Complaint.

45.     Stella denies the allegations contained in paragraph 45 of the Complaint.

46.     Stella denies the allegations contained in paragraph 46 of the Complaint.

47.     Stella denies the allegations contained in paragraph 47 of the Complaint.

48.     Stella restates and re-alleges each of his responses set forth above and incorporates them herein.

49.     Stella denies the allegations contained in paragraph 49 of the Complaint.

50.     Stella denies the allegations contained in paragraph 50 of the Complaint.

51.     Stella denies the allegations contained in paragraph 51 of the Complaint.

52.     Stella restates and re-alleges each of his responses set forth above and incorporates them herein.

53.     Stella denies the allegations contained in paragraph 53 of the Complaint.

54.     Stella denies the allegations contained in paragraph 54 of the Complaint.

55.     Stella denies the allegations contained in paragraph 55 of the Complaint.

56.     Stella denies the allegations contained in paragraph 56 of the Complaint.

57.     Stella denies the allegations contained in paragraph 57 of the Complaint.

58.     Stella denies the allegations contained in paragraph 58 of the Complaint.

59.     Stella denies the allegations contained in paragraph 59 of the Complaint.

60.     Stella denies the allegations contained in paragraph 60 of the Complaint.

61.     Stella denies the allegations contained in paragraph 61 of the Complaint.

62.     Stella restates and re-alleges each of his responses set forth above and incorporates them herein.

63.     Stella denies the allegations contained in paragraph 63 of the Complaint.

64.     Stella denies the allegations contained in paragraph 64 of the Complaint.

65.     Stella denies the allegations contained in paragraph 65 of the Complaint.

66.     Stella denies the allegations contained in paragraph 66 of the Complaint.

67.     Stella denies the allegations contained in paragraph 67 of the Complaint.

68.     Stella restates and re-alleges each of his responses set forth above and incorporates them herein.

69.     Stella denies the allegations contained in paragraph 69 of the Complaint.

70.     Stella denies the allegations contained in paragraph 70 of the Complaint.

71.     Stella denies the allegations contained in paragraph 71 of the Complaint.

72.     Stella denies the allegations contained in paragraph 72 of the Complaint.

73.     Stella denies the allegations contained in paragraph 73 of the Complaint.

74.     Stella denies the allegations contained in paragraph 74 of the Complaint.

75.     Stella denies the allegations contained in paragraph 75 of the Complaint.

76.     Stella restates and re-alleges each of his responses set forth above and incorporates them herein.

77.     Stella denies the allegations contained in paragraph 77 of the Complaint.

78.     Stella denies the allegations contained in paragraph 78 of the Complaint.

79.     Stella denies the allegations contained in paragraph 79 of the Complaint.

80.     Stella denies the allegations contained in paragraph 80 of the Complaint.

81.     Stella denies the allegations contained in paragraph 81 of the Complaint.

82.     Stella denies the allegations contained in paragraph 82 of the Complaint.

83.     Stella denies the allegations contained in paragraph 83 of the Complaint.

84.     Stella denies the allegations contained in paragraph 84 of the Complaint.

85.     Stella denies the allegations contained in paragraph 85 of the Complaint.

86.     Stella restates and re-alleges each of his responses set forth above and incorporates them herein.

87.     Stella admits the allegations contained in paragraph 87 of the Complaint.

88.     Stella denies the allegations contained in paragraph 88 of the Complaint.

89.     Stella denies the allegations contained in paragraph 89 of the Complaint.

90.     Stella denies the allegations contained in paragraph 90 of the Complaint.

91.     Stella restates and re-alleges each of his responses set forth above and incorporates them herein.

92.     Stella admits the allegations contained in paragraph 92 of the Complaint.

93.     Stella denies the allegations contained in paragraph 93 of the Complaint.

94.     Stella denies the allegations contained in paragraph 94 of the Complaint.

95.     Stella denies the allegations contained in paragraph 95 of the Complaint.

96.     Stella restates and re-alleges each of his responses set forth above and incorporates them herein.

97.     The allegations contained in paragraph 97 of the Complaint are argumentative and conclusive in nature and generally require no factual response by Stella. However, Stella denies that Shredz is entitled an injunction.

98.     The allegations contained in paragraph 98 of the Complaint are argumentative and conclusive in nature and generally require no factual response by Stella. However, Stella denies that Shredz is entitled an injunction.

## II.
## AFFIRMATIVE DEFENSES

99.     Stella reasserts and re-alleges each of the allegations set forth above and incorporates same herein.

### A. AFFIRMATIVE DEFENSE – LACHES

100.    Stella asserts that all or some of Shredz's claims are barred by laches.

### B. AFFIRMATIVE DEFENSE - ESTOPPEL

101.    Stella asserts that all or some of Shredz's claims are barred by estoppel, equitable estoppel, waiver, or its own conduct and/or unclean hands.

### C. AFFIRMATIVE DEFENSE – FAILURE OF CONSIDERATION

102.    Stella asserts that all or some of Shredz's causes of action are barred by failure of consideration. Particularly, Shredz seeks to enforce an alleged covenant not to compete for which no consideration was given.

### D. AFFIRMATIVE DEFENSE - FRAUD

103.    Stella asserts that Shredz's claims are fraudulent, and therefore Shredz is not entitled to any of the relief sought in its Complaint.

104.   Specifically, Stella resigned his position with Shredz in order to relocate to Texas. At that time, Shredz began to seek Stella to enter into a new agreement; the Work-For-Hire agreement. The agreement was drafted by Shredz's in-house lawyer and presented to Stella for signature on the afternoon of Friday, August 14, 2015, the day Stella left New Jersey to begin his long drive to Texas. Based on the Work-For-Hire, agreement Stella believed he was going to continue working with Shredz as a remote employee.

105.   On information and belief, Shredz had already made the decision to not actually re-hire Stella under the Work-For-Hire agreement, but instead to use the promise of the Work-For-Hire agreement, which contained a more restrictive covenant not to compete and confidentiality agreement, to harm Stella and to attempt to eliminate Stella as future competition.

106.   As Stella began his drive to Texas to reunite with his family, Shredz began working through the night to conduct its fraudulent action. On information and belief, Shredz, within hours of the execution of the Work-For-Hire agreement, illegally accessed Stella's personal email account and further began to gather all data from his computer.

107.   On information and belief, Shredz consulted with outside counsel on Monday, August 17, 2015, or possibly earlier, to begin drafting the termination of the Work-For-Hire agreement.

108.   Shredz spent Monday, August 17, 2015, until late in the evening/early into the next morning obtaining every bit of information they could from Stella about the skills he had in execution of their plan.

109.   Less than two working days after the Work-For-Hire agreement was signed, on Tuesday August 18, 2015, Shredz terminated the Work-For-Hire agreement and sent a

cease and desist letter, attached hereto as Exhibit 'A' and incorporated herein by reference as if fully set forth at length, to Stella. Their plan was completed.

110. Shredz's actions demonstrate their fraudulent intent to never honor the Work-For-Hire agreement. Shredz never paid any consideration under the Work-For-Hire agreement. Shredz fraudulently induced Stella to enter into the Work-For-Hire agreement with an untrue promise of $10,000.00 per month and the promise of continued work from Texas when Shredz never had any intention to honor said agreement.

### E. AFFIRMATIVE DEFENSE – UNCLEAN HANDS

111. Shredz's actions were fraudulent and done with unclean hands.

### F. AFFIRMATIVE DEFENSE - REFORMATION

112. In the alternative, Stella pleads for reformation of any covenant not to compete. Stella further pleads that the Court should award no damages for any conduct of Stella prior to any necessary reformation of the scope of any covenant not to compete. Further, should the Court reform the covenant not to compete, Shredz's damages should be limited to injunctive relief, if any.

113. Stella reserves the right to add additional defenses, or pursue any available counterclaims, upon the completion of discovery or in compliance with the Court's order.

### III. COUNTERCLAIMS

### A. THE PARTIES

114. Defendant/Counter-Plaintiff Stella is an individual residing in the State of Texas.

115. Upon information and belief, Plaintiff/Counter-Defendant Shredz is a New Jersey limited liability company, duly organized and existing under the laws of the State of New

Jersey, having a principal place of business in Jersey City, New Jersey. No service is necessary at this time.

## B. JURISDICTION AND VENUE

116. The Court has personal jurisdiction over Shredz based on both general and specific jurisdiction. During all times relevant to this lawsuit Shredz has continuously done business in the State of Texas, and it continues to do business in the State of Texas.

117. The Court has subject matter jurisdiction over this case based, *inter alia*, on federal question jurisdiction because Stella bases his claims in this case on federal law, specifically the FLSA.

118. The Court has supplemental or ancillary jurisdiction over counterclaims and compulsory counterclaims respectively.

119. Additionally, the Court has jurisdiction over Shredz as the suit was initiated by Shredz in this Court against Stella.

## C.
## COUNTERCLAIM – CAUSE OF ACTION - DEFAMATION

120. Stella reasserts and re-alleges each of the allegations set forth above and incorporates same herein.

121. On information and belief, since approximately August 14, 2015, multiple defamatory statements have been made against Stella by employees and management of Shredz, including officers of Shredz, including the following statements:

    a.      Stella was terminated, fired, or let go from the company.

    b.      Stella stole proprietary information and trade secrets from Shredz.

    c.      Stella is a thief.

     d.     Stella is unfairly competing with Shredz.

122.    These statements are entirely false.

123.    These defamatory statements constitute defamation per se in that they tend to injure or impeach Stella's reputation, integrity, and competence, thereby exposing Stella to public hatred, contempt, ridicule, and financial injury.

124.    At all times material hereto, the employees, management, and officers of Shredz were acting within the course and scope of their employment and/or agency relationship with Shredz. Therefore, Shredz is vicariously liable for the damages caused by the defamatory statements made by their employees, management, and officers.

125.    As a direct and proximate result of the Shredz's defamatory statements, Stella's reputation has been severely injured. Stella seeks damages for these injuries in an amount within the jurisdiction of this Court.

**D.**
**COUNTERCLAIM – CAUSE OF ACTION – DECLARATORY JUDGMENT**

126.    Stella reasserts and re-alleges each of the allegations set forth above and incorporates same herein.

127.    Stella entered into the original employment agreement with Shredz on March 30, 2015, for which no consideration for the covenant not to compete was paid to Stella. Further, Shredz fraudulently entered into a Work-For-Hire agreement with Stella on August 14, 2015, for which no consideration for the covenant not to compete was paid to Stella. Further, it is abundantly clear that Shredz had no intention of honoring the agreement.

128.    Based on the foregoing facts, Stella requests the Court declare invalid the original employment agreement and the Work-For-Hire agreement entered into between Stella and Shredz.

129.    Should the Court find the Work-For-Hire agreement valid, Stella requests the Court declare the covenant not to compete contained within any agreement between Stella and Shredz invalid, overly broad and/or not enforceable.

## E.
## COUNTERCLAIM – CAUSE OF ACTION – BREACH OF CONTRACT

130.    Stella reasserts and re-alleges each of the allegations set forth above and incorporates same herein.

131.    In the alternative, Stella asserts claims against Shredz for breach of contract. Specifically, on August 14, 2015, Stella entered into a written contract with Shredz, the Work-For-Hire agreement. Among several other provisions, this contract provided that Stella would continue working for Shredz in exchange for compensation in the amount of $10,000.00 per month.  At no time did Stella violate any provision of the written agreement, and, in fact, Stella fully performed his obligations under the contract. However, Shredz has not performed its contractual obligations. Specifically, Shredz failed to pay any consideration to Stella under the contract.

132.    Additionally, the Work-For-Hire agreement contained a clause requiring the parties to mediate before litigation is filed. In fact, this provision was specifically addressed through correspondence from Stella's counsel, which is attached hereto as Exhibit 'B' and incorporated herein by reference as if fully set forth at length. Shredz wholly ignored counsel for Stella, wholly ignored the mediation provision in the

agreement they drafted, and, despite this provision being brought to their attention and despite the appearance of counsel for Stella, Shredz willfully disregarded the mediation provision and initiated suit, even serving Stella personally as opposed to exacting service through legal counsel.

133.     Additionally, under the initial contract signed by Stella on March 30, 2015, Shredz owes Stella compensation through the end of the initial contract, August 15, 2015, in the amount of $1,648.55.

134.     Shredz's breach of this agreement proximately caused actual, consequential, incidental, direct and/or special damages to Stella.

**F.**
**COUNTERCLAIM – CAUSE OF ACTION – FLSA**

135.     Stella reasserts and re-alleges each of the allegations set forth above and incorporates same herein.

136.     For a period of twenty (20) weeks, from March 30, 2015 until August 14, 2015, Stella worked for Shredz as a marketer/salesperson. Throughout Stella's employment with Shredz, Stella worked more than forty hours per week ("overtime hours").

137.     Further, Shredz misclassified Stella as "exempt" from overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and thus did not pay him overtime when he worked more than forty hours in a workweek. Shredz's classification of Stella as "exempt" from overtime was erroneous.

138.     Shredz employs many other marketers/salespersons. Shredz has misclassified them too. Accordingly, Stella brings this FLSA suit for unpaid overtime, liquidated

damages, attorney's fees, costs, and interest on behalf of himself and others similarly situated.

## i. THE PARTIES, COVERAGE, AND JURISDICTION

139.    Stella is a natural person residing in the confines of the Eastern District of Texas, Sherman Division, within the State of Texas. Stella has standing to file this lawsuit, in that he was an employee engaged in interstate commerce or in the production of goods for interstate commerce under the FLSA. *See* 29 U.S.C. §§ 206-07.

140.    The "Members of the Class" are all current and former employees who are engaged in marketing and/or sales and were employed by Shredz during the three-year period preceding the filing of this complaint who were classified as "exempt" from overtime by Shredz. Like the named Plaintiff, these persons were and are engaged in interstate commerce in performing their duties for Shredz. All of the "Members of the Class" are similarly situated to Plaintiff and to one another, within the meaning of section 216(b) of the FLSA.

141.    Shredz, operates its business for profit in the United States of America, and has its corporate headquarters in New Jersey.

142.    Shredz is a company which sells and markets dietary supplements.

143.    Shredz engaged in commerce or the production of goods for commerce at all material times, including in 2012, 2013, 2014, and 2015. Shredz continues at this time to engage in commerce or the production of goods for commerce.

144.    Shredz had annual revenues in excess of $500,000 at all material times, and has had annual revenues in excess of $500,000 in all years from 2012 to present.

145.     Shredz has, at all material times, acted, directly or indirectly, in the interest of an employer with respect to Stella.

146.     Shredz has, at all material times, been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

147.     Shredz has, at all materials times, been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

148.     Shredz has, at all material times, been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that Shredz has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and Shredz has had, and continues to have, annual gross volume of sales made or business done in excess of $500,000, exclusive of excise taxes at the retail level which are separately stated.

## ii. FACTUAL BACKGROUND

149.     Stella was hired by Shredz as a marketer/salesperson on March 30, 2015. He continuously and actively worked for Shredz until he resigned to move to Texas on August 14, 2015.  During his entire employment Shredz misclassified Stella as "exempt" from overtime under the FLSA, and thus did not pay him overtime when he worked more than forty hours in a workweek, which he often did. Over the 20 weeks Stella was employed by Shredz, he was paid total compensation of $40,738.50. Shredz's classification of Stella – and the other similarly situated Members of the Class – as "exempt" from overtime was erroneous.

150. From March 30, 2015 until August 14, 2015, Stella worked as a marketer/salesperson at Shredz's New Jersey office with approximately twenty (20) other marketer/salespersons. All of these employees worked to sell the company's various products over the internet. The other employees were grouped into two job titles, National Sales Associate or Customer Service Associate (from an FLSA perspective, the job is the same or substantially the same).

151. The FLSA provides generally that "no employer shall employ any of his employees...for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An employer claiming that an employee is exempt from this provision bears the burden of proving that an employee is exempt. *Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999). In light of the FLSA's broad remedial aims, the exemptions from the FLSA's coverage are narrowly construed against the employer. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S. Ct. 453 (1960). The employer must prove that the employee falls "plainly and unmistakably within [the] terms and spirit" of the exemption. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S. Ct. 807 (1945). The inquiry into an employee's exempt status is "intensely factbound and case specific." *Dalheim v. KDFW–TV*, 918 F.2d 1220, 1226 (5th Cir.1990).

152. The exemptions from the FLSA's overtime requirement that most commonly apply to white collar workers are the FLSA's executive, professional, or administrative exemptions. However, Stella was not exempt from overtime under the FLSA's

executive, professional, or administrative exemptions (or any other exemption), and neither were any of the other and the Members of the Class.

### iii. FLSA CLAIMS

153.    Under the FLSA, employers such as Shredz are generally required to pay employees time and one-half times their regular rate for all hours worked over 40 in a workweek. *See* 29 U.S.C. § 207(a)(1). As the Fifth Circuit has stated: "The Fair Labor Standards Act generally requires that employees be paid an overtime premium of "time-and-one-half" for all hours worked in excess of forty hours in a week." *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 633 (5th Cir. 2001) (citing 29 U.S.C. § 207(a)). But, there are some exemptions to this rule. Under the law, those exemptions are narrowly construed, and the burden of proof to establish them lies with the employer. *Vela*, 276 F.3d at 666. The three most common exemptions to the overtime pay requirement are the executive, professional, and administrative exemptions. Stella does not fit within any of these exemptions, or any other exemption from the FLSA's overtime pay requirement. Neither do any of the other Members of the Class.

154.    At all material times, Stella and the other Members of the Class were employees of Shredz under the FLSA. 29 U.S.C. § 203(e).

155.    At all material times, Shredz was and is a covered employer under the FLSA. 29 U.S.C. § 203(d).

156.    At all material times, Stella and (upon information and belief) the other Members of the Class often worked in excess of 40 hours per seven-day workweek, and Shredz knew and encouraged them to do so.

157.    The president of Shredz would give motivational speeches to his employees which he entitled "Midnight Motivation". These speeches were given at midnight or in the wee hours of the morning to encourage Members of the Class to get out of bed and get into work every single night. Members of the Class were told that they were of the type of employee that worked 24 hours a day, 7 days a week. Members of the Class were told that there was not a "night shift", because a night shift had the implication of being optional; instead they were told there was a "first shift" and "second shift". Second shifts were not optional. Members of the Class were expected to work the "first shift", then go home, eat dinner and shower, and come back that same day to work their "second shift". In the video obtained, the president of Shredz admitted that, during the time he was recording the video, it was midnight in New Jersey and he had 50 employees at that very moment working their "second shift", going on to state that he came back "just like" the 50 employees currently there, who are required to work "two shifts a day". He further states that Shredz doesn't call it the "night shift", because calling it the night shift implies that you only work at night. In the same video, the president of Shredz also states that policies such as these are how you achieve success. This video is very lengthy, where the president of Shredz repeatedly uses profanity, including the "F" word, to motivate his employees to work through the night and even tells them to stay motivated by not going to sleep. Clearly, Members of the Class were required to work excessive hours and were even told their reward would be that the company would someday be sold for millions of dollars and that "the janitor at Facebook" was a millionaire.

158.    Shredz was open for business 24 hours a day, 7 days a week. Members of the Class typically worked over 60 hours per week and often times in excess of 80 hours per week.

159.    At all material times, under the FLSA, Stella and the other Members of the Class were entitled to overtime compensation of one and one-half times their regular hourly rate for hours worked over 40 in a seven-day workweek. 29 U.S.C. § 207(a)(1).

160.    At all material times, Shredz failed to pay Stella and the other Members of the Class overtime compensation of one and one-half times their regular hourly rate of pay for hours worked over 40 in a seven-day workweek.  Rather, at all material times, as explained above, Shredz paid Stella and the other Members of the Class a flat salary plus bonuses for all hours they worked each workweek, regardless of how many hours they worked in the workweek.

161.    As such, Stella and the other Members of the Class are entitled to back-pay for all unpaid overtime at the rate of one and one-half times their regular hourly rate, as required by the FLSA.

162.    Shredz did not systematically keep accurate and complete records of the hours Stella, or the other Members of the Class, worked.

163.    Stella's estimate of hours worked, as well as estimates of Members of the Class, should be accepted by the Court because where, as here, the employer failed to maintain accurate working time records in compliance with the law, the employee's reasonable estimate of hours worked will be accepted. *U.S. Dep't of Labor v. Cole Enterprises*, 62 F.3d 775 (6th Cir. 1995).  As the U.S. Supreme Court held:

> Where the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact

performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result is only approximate.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).

164.    Under these circumstances, courts have "in effect ordered the fact finder to do the best he could in assessing damages." *Mitchell v. Riley*, 296 F.2d 614, 616 (5th Cir. 1961). As the Supreme Court further observed in *Mt. Clemens Pottery*:

The solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work.

\* \* \*

In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.

328 U.S. at 687-688; *see also Albanil v. Coast 2 Coast, Inc.*, 444 Fed. Appx. 788, 806 (5th Cir. 2011) ("Where an employer has failed to maintain accurate payroll records, an employee carries his burden to establish a prima facie case under the FLSA if he shows he performed work for which he was improperly compensated and produces some evidence to show the amount and extent of that work "as a matter of just and reasonable inference.").

165.    The FLSA's normal statute of limitations is two years. However, proof of a "willful" violation triggers a three-year statute of limitations, rather than the normal two-year limitations period. 29 U.S.C. § 255(a). It is the plaintiff's burden to show that Shredz either knew or showed reckless disregard for whether its pay scheme violated the

FLSA. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Given adequate discovery, Stella currently believes that he can satisfy that burden, as the plaintiff did in *Singer v. City of Waco*, 324 F.3d 813, 821-22 (5th Cir. 2003) (upholding a jury finding of willfulness).

166.     In addition to unpaid overtime, Shredz owes Stella and the other Members of the Class an amount equal to his unpaid overtime in liquidated damages. This is so because FLSA Section 216(b) provides for "an additional equal amount in liquidated damages." 29 U.S.C. § 216(b). The purpose of liquidated damages is to "compensate an employee for delay in payment." *Reich v. Helicopter Servs., Inc.*, 8 F.3d 1018, 1031 (5th Cir. 1993) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 715–16, 65 S. Ct. 895, 89 L.Ed. 1296 (1945)). A court generally must award the full amount of actual damages as liquidated damages. *Singer*, 324 F.3d at 822-23.

167.     It is the employer's burden to prove good faith and reasonableness. *Lee v. Coahoma Cnty., Miss.*, 937 F.2d 220, 227 (5th Cir. 1991); *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 925 (E.D. La. 2009). If the jury concludes that the employer has willfully violated the FLSA, the employer cannot demonstrate good faith, and the court must award liquidated damages in the full amount. *See Singer*, 324 F.3d at 823 (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999)); *Lee*, 937 F.2d at 226. But "[a] finding that Stella's actions were not willful does not preclude a finding that Stella did not act in good faith and on reasonable grounds." *Johnson*, 604 F. Supp. 2d at 926 (citing *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1274 (11th Cir. 2008) ("Because the burden of proof is placed differently, a finding that willfulness was not present may co-exist peacefully with a finding that good faith was not present.")).

168.     The employer's burden to demonstrate good faith and a reasonable belief that its actions complied with the FLSA is "substantial." *Singer*, 324 F.3d at 323; *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990). "Good faith cannot be based on ignorance, but instead 'requires some duty to investigate potential liability under the FLSA.'" *Johnson*, 604 F. Supp. 2d at 926 (quoting *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468–69 (5th Cir. 1979)). The employer must show that it "had an honest intention to ascertain what the Act requires and to act in accordance with it." *Id.* (citing *Dybach v. State of Fla. Dept. of Corr.*, 942 F.2d 1562, 1566 (11th Cir. 1991) (internal citations omitted)). Even if the court concludes that the employer acted reasonably and in good faith, there is a "strong presumption ... in favor of doubling." *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 929 (quoting *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 733 (7th Cir. 1998)). "Doubling of an award is the norm...." *Id.* (discussing the Family and Medical Leave Act, which uses essentially the same damages scheme as the FLSA).

169.     Based on the foregoing legal standard, and the nature of Shredz's FLSA violations, it is clear Shredz cannot prove "good faith," and is liable for liquidated damages as a matter of law.

170.     The FLSA also provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the Defendant . . . ." *See* 29 U.S.C. § 216(b); *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 n. 25 (5th Cir. 2006) (affirming attorney's fees award in FLSA case of over $100,000.00, which is by no means unusually high); *Prater v. Commerce Equities Management Co., Inc.*, Civil Action No. H–07–2349, 2008 WL 5140045, at *8 (S.D.

Tex., Dec. 8, 2008) (decision by Judge Lee Rosenthal issued after mediation in which she awarded Steele Sturm PLLC $117,553.04 in attorneys' fees in a FLSA case even though they never even took a deposition in the case and the case did not go to trial).

171.  Where, as here, "the employers' actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis." *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007).

172.  Accordingly, Stella seeks to represent a class ("Members of the Class") under 29 U.S.C. § 216(b) on behalf of:

> "all current and former marketing and salespersons, including National Sales Associates and Customer Service Associates who were employed by Shredz during the three-year period preceding the filing of this Complaint who were classified as "exempt" from overtime by Shredz."

## G. COUNTERCLAIM – CAUSE OF ACTION – VIOLATION OF NEW JERSEY'S COMPUTER-RELATED OFFENSE ACT, N.J. STATUTE 2A:38A-3

173.  Stella reasserts and re-alleges each of the allegations set forth above and incorporates same herein.

174.  Upon information and belief, Shredz violated the Computer Related Offenses Act by purposefully and knowingly, and without authorization, accessing or attempting to access Stella's personal "Gmail" account for the purposes of obtaining information about Stella's business.

175.  As a direct and proximate result of Shredz's violations of the Computer Offenses Act, Stella has suffered and will suffer substantial damages, the extent of which are yet to be fully discovered.

176.    Shredz's conduct was willful, wanton, malicious, and/or in disregard of Stella's rights and, therefore, Stella is entitled to recover punitive damages.

## IV.
## ATTORNEY'S FEES

177.    It was necessary for Stella to retain the services of Steve Kuzmich, a licensed attorney, to represent Stella in this action. Stella has agreed to pay reasonable and necessary attorney's fees. Stella requests that reasonable attorney's fees, expenses, and costs through trial and appeal be taxed as costs and be ordered paid directly to Stella's attorney, who may enforce the order in the attorney's own name.   Stella requests post-judgment interest as allowed by law.

178.    Specifically, Stella is entitled to attorney's fees under the law including, but not limited to, the following causes of action:

    a.   An employee that substantially prevails in defending the enforcement of a covenant not to compete, including the reformation of same, is entitled to attorney's fees;

    b.   Breach of Contract;

    c.   FLSA; and,

    d.   New Jersey Computer Related Offense Act.

## V.
## PRAYER FOR RELIEF

179.    WHEREFORE, Stella respectfully requests that the Court deny all of Shredz's claims, enter a take-nothing judgment in favor of Stella, dismiss this action with

prejudice, award Stella his attorney's fees and costs and grant Stella such other relief as is appropriate and just.

180.    Stella further prays that he and the other Members of the Class be awarded a judgment against Shredz for the following:

a.    Actual damages, including, but not limited to, the amount of unpaid overtime wages;

b.    Liquidated damages;

c.    Punitive damages;

d.    Prejudgment and postjudgment interest;

e.    Court costs;

f.    Reasonable attorney's fees;

g.    Declaratory relief sought in paragraphs 126 through 129 above; and

h.    All other relief to which Stella and the Members of the Class are justly entitled.

Respectfully Submitted,

By: _____
STEVE KUZMICH
Texas Bar Card No. 00789428
skuzmich@kuzmichlaw.com
Kuzmich Law Firm, P.C.
335 West Main Street
Lewisville, Texas 75057
(972) 434-1555 Phone
(972) 219-9948 Fax
**ATTORNEY FOR
DEFENDANT/COUNTER-
PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 13th day of October, 2015, a true and correct copy of the foregoing document was delivered to all counsel of record in accordance with the Federal Rules of Civil Procedure.


**STEVE KUZMICH**
**ATTORNEY FOR**
**DEFENDANT/COUNTER-PLAINTIFF**